OLYMPIC INSURANCE COMPANY,
Plaintiff-Appellee,

v.

H. D. HARRISON, INCORPORATED
d/b/a Harrison Insurance Service, Hugh
D. Harrison, et al., Defendants-Appellants.

No. 27862.

United States Court of Appeals
Fifth Circuit.

Oct. 6, 1969.

Carl J. Schumacher, Jr., Clarence F. Favret, Jr., Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Donald R. Mintz, New Orleans, La., for defendants-appellants.

Rader Jackson, Steeg & Shushan, Moise S. Steeg, Jr., New Orleans, La., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM:

In Olympic Insurance Company v. Harrison, 5 Cir.1969, 413 F.2d 973 [July 3, 1969], we dismissed the appeal for failure of the appellant to comply with the provisions of Rule 12(c), Federal Rules of Appellate Procedure with respect to payment of the $25.00 docket fee. On July 16, 1969, we suspended the issuance of the mandate until we could consider the appellants' brief on the merits. A careful review of the briefs and the record reinforces our initial conclusion that the appeal was without merit. Therefore we deny the appellants' motion for a rehearing and order the appeal dismissed.

Although the appellants' brief is lengthy and numerous errors are asserted, the essential thrust of the appellants' argument is that the amount which the

district court found due was inaccurate and therefore a material issue of fact was raised which could not be resolved by summary judgment. We disagree largely for the reasons advanced by the unpublished memorandum of the district court. (See Appendix).

■ We make the following additional observations. First, we find no merit to the contention that the I.B.M. printouts, which formed the basis of the insurance company's proof that Harrison had not paid over premiums he had collected, were unreliable. There can be no dispute that the printouts were produced in the ordinary course of business and at least have a prima facie aura of reliability. See Title 28, U.S.C., Sec. 1732. In view of the appellants' failure to list any specific objections as to the accuracy of the printouts, we cannot say that the district court erred in relying on them as the basis for its judgment.

■ Second, the appellants now assert that the insurance company failed to credit them with contingent commissions and therefore there was a material issue of fact as to the amount owed. The appellants made no claim below as to any specific amount owed them as a result of the Company's failure to credit them with contingent commissions. Therefore their complaint must fail. (See Appendix). Additionally, the agency contract clearly reveals that the appellants had no claim to contingent commissions at the time of the judgment. The contract states:

"In the event of termination the computation of General Agent's contingent commission shall not be made until *all of Company's obligations under policies written hereunder shall have been terminated*". (Emphasis added)

The appellants made no suggestion at trial and make none on appeal that the trailer insurance issued by it as general agent, has expired. It is clear from the agency contract that until such policies expire and the Company's obligations thereunder are terminated, the appellants are not entitled to contingent com-

missions. Thus we conclude that the amount found due by the district court is free from inaccuracy.

The appellants' motion for a rehearing is denied and the appeal is dismissed. Let the mandate issue immediately.

## APPENDIX

CASSIBRY, District Judge:

Plaintiff instituted suit against H. D. Harrison, Incorporated, d/b/a Harrison Insurance Service, praying for an accounting and judgment for the amount due by H. D. Harrison, Incorporated (Corporation) to plaintiff for insurance premiums arising out of policies written by Corporation as plaintiff's Agent. Plaintiff also sought a judgment against Hugh D. Harrison and his wife, Robbie Sutton Harrison, individually, based upon written guaranties executed by the individuals to secure the obligation of Corporation. An Answer was filed by the Corporation admitting that it was plaintiff's Agent, but entering a general denial to all other allegations and asserting certain special defenses which in turn were the basis of a counterclaim.

Plaintiff moved for a summary judgment, and for a default judgment against Robbie Sutton Harrison for whom no responsive pleadings were filed. Counsel for Robbie Sutton Harrison moved that the suit be dismissed as to her or the citation quashed on the ground that improper service had been made. Plaintiff admitted that proper citation had not been made, but urged that since the motion by which the firm of Lemle and Kelleher were made counsel of record included them as counsel for Robbie Sutton Harrison, this constituted an appearance and thus waived the defective citation, citing United States v. Hoerner, D. Montana 1957, 157 F. Supp. 563. While it is correct that as a general rule any *action* on the part of a defendant, except objection to jurisdiction over his person, will constitute a general appearance, the mere filing of a motion recognizing counsel who then object to the jurisdiction is not such "ac-

tion" as contemplated by *Hoerner,* and accordingly, Robbie Sutton Harrison's motion to dismiss this suit for lack of jurisdiction should be granted.

Plaintiff moved for a summary judgment in the amount of $302,755.63. In support of its motion and according to the local rules, plaintiff filed a "Statement of Undisputed Material Facts," an affidavit and other documents consisting primarily of an itemized statement of the account between plaintiff and defendant (sworn to by a principal officer of plaintiff), and the original of a check paid by defendant on this account but concerning which payment had been stopped. Plaintiff contends, and I agree, that this is affirmative, specific, factual proof of the indebtedness of defendant to plaintiff as of October 31, 1968.

Defendant filed its counter affidavit, but failed to comply with the rule requiring the filing of a "Statement of Material Facts at Issue." Plaintiff contends that defendant's affidavit should not be considered.

When the motion for summary judgment was first brought on for hearing, counsel moved for a continuance on the ground that a full set of the documents in support of plaintiff's motion (although served on Clarence F. Favret, Jr., Esq., one of attorneys of record) had not been served on associate counsel, Carl Schumacher, Esq. A continuance was granted and thereafter a counter affidavit was filed on behalf of Corporation and Hugh D. Harrison. Plaintiff moved that this continuance and permission to file affidavit be recalled. It is not necessary to rule on the legal contentions made by plaintiff. Even if technically correct, it is within the sound discretion of this court to permit the filing of affidavits at anytime, even after the hearing, if the ends of justice would be properly served. 6 Moore's Federal Practice, 2d. Ed., Sec. 56.23, p. 2853. In a matter of such consequence as this, it would not be proper for this court to rule without considering defendant's af-

fidavit, therefore, plaintiff's motion in this contention is overruled.

The court now has before it the affidavits of both parties and must determine whether a genuine issue of fact exists and if not, the court is compelled to grant plaintiff's motion for summary judgment.

The law with respect to the granting of a summary judgment in a matter such as this is clearly set forth in F.R. Civ. P. 56 and Rule 4 of this court. The doctrine following in this jurisdiction is clearly enunciated in these three decisions: Bruce Construction Corporation v. United States of America, 242 F.2d 873 (1957); Lawhorn v. Atlantic Refining Company, 299 F.2d 353 (1962) and Royal Indemnity Company v. United States, 371 F.2d 462, 178 Ct.Cl. 46 (1967). In Bruce Construction Corporation, supra, Judge Brown articulated the rule as follows:

"We have long recognized that no matter how enticing, in an era of contested dockets, is a device to dispose of cases without the delay and expense of traditional trials with their sometimes cumbersome and time-consuming characteristics, summary judgment was not devised for, must not be used as, a substitute for trial. Its wholesome utility is, in advance of trial, to test, not as formerly on bare contentions found in the legal jargon of pleadings, but on the intrinsic merits, whether there is in actuality a real basis for relief or defense. Consequently, where the proceedings have indicated that a genuine issue existed, we have consistently rejected appealing shortcuts and not the less so even though it was likely that on a trial, the trier would resolve the disputed issues as one of fact in the same manner as when thought to have been one of law alone."

"But, equally vigorous in giving full range to this mechanism, we have just as consistently rejected any notions that pretense, or apparent formal controversy can thwart application of this rule or hamstring the court in deter-

mining whether it is a proper case for it. Consequently, when a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, nor formal, controversy exists, and, of course, he does not do that by mere denial or holding back evidence."

The supporting papers filed by plaintiff and the admissions of the Corporation conclusively establish that as of October 31, 1968, Corporation was indebted to plaintiff for premiums on insurance policies written by it as plaintiff's agent in the amount of $302,755.63. The IBM itemized statement annexed to plaintiff's affidavit is full, complete and detailed. Defendant's affidavit is not specific and does not deny the correctness of the accounting in any connection. The affidavit says that in the past plaintiff's IBM statements have contained inaccuracies, but defendant does not point out any inaccuracies in this statement. It further contends that payments were made directly to Olympic and that "* * * this activity is not revealed in the Agent's statement dated October 31, 1968." However, defendant cannot furnish a single amount allegedly collected by plaintiff and not revealed. Defendant further states that certain contingent commissions should be allowed; defendant should know what contingent commissions, if any, are due defendant, and it is not sufficient, when faced with carefully itemized statements, for the defendant to create an issue of fact by broad general denials when defendant has the knowledge to particularize. In these respects, it is my opinion that the affidavit filed by defendant does not meet the requirements of F.R.Civ.P. Rule 56, and our Rule 4, subd. E(2).

Apparently, as appears from oral argument, defendant's principal thrust is to rely on its allegations that plaintiff has engaged in a course of conduct culminating on September 20, 1968, constituting as a matter of law a breach of plaintiff's obligations to defendant and that therefore defendant is entitled to recover damages for which it has filed its counterclaim. This poses the legal question of whether such contentions are a proper defense or are only the basis of plaintiff's possible recovery if plaintiff establishes its facts. The actions of plaintiff which may have caused damage to defendant do not relieve defendant of its clear and unequivocal obligation under its agency contract to remit premiums it has collected on policies for third-party insureds to the insurer. The insurer's prejudicial actions would constitute only a right or cause of action to recover the damages incurred as a result therefrom. At best, plaintiff can claim that it should have the right to offset those damages against its indebtedness. In this case we are Erie bound and it is clear under the law of Louisiana that an unliquidated debt cannot be the basis of an offset against a properly liquidated account. Louisiana Civil Code Article 2209. United States of America for Use and Benefit of A & W Concrete & Bldg. Materials, Inc. v. A. P. Johnson Contractor, Inc., E.D.La.1964, 225 F.Supp. 727. This case is particularly significant since it is relevant both as to the question of offset and the question of summary judgment. Judge Ainsworth held that a contractor was entitled to a summary judgment for the price of cement delivered, even though the defendant contested the right to a summary judgment based upon alleged breach of contract by the plaintiff. In so holding Judge Ainsworth said:

"First, setoff or compensation takes place only between two debts which are equally liquidated and demandable. The law of Louisiana is explicit in this regard. The debt asserted by A & W is fixed and certain and therefore liquidated. A certain amount of cement, at a certain price, was delivered and poured. The invoices, signed dray tickets and affidavits submitted prove the existence of the debt to A & W, and the evidence is uncontradicted. On the other hand, the alleged claim of Harris-Smith does not meet this test; it is contested and not capa-

ble of exact ascertainment, based as it is on damages claimed because of an alleged breach of contract occasioned by delays, insufficiency of deliveries and other allegations not capable of proof promptly and summarily."

Plaintiff having shown conclusively that ·on October 31, 1968, Corporation owed it $302,755.63 and the defendant having failed to specifically controvert the accuracy of plaintiff's claim, it appears that plaintiff is entitled to a summary judgment in this amount against Corporation.

Plaintiff seeks similar judgment against Hugh D. Harrison, individually, predicated upon a continuing guaranty executed by Hugh D. Harrison on July 6, 1965 and annexed to plaintiff's complaint. There is also annexed to this complaint a letter from Hugh D. Harrison dated June 29, 1968, whereby Harrison seeks to revoke the effect of this continuing guaranty. There is nothing in this record filed by defendant to deny the execution of the guaranty, but to the contrary, Harrison's counsel in oral argument urged that Harrison had the right unilaterally to cancel the guaranty and limit its effectiveness to the date of such cancellation. This contention is also made in Harrison's memorandum wherein counsel relies on Magnolia Petroleum Company v. Harley, 13 So.2d 84 (La.App.2nd Cir.1943). This decision does not support Harrison's position. The guaranty in *Magnolia Petroleum Company* contained no irrevocability of term. On the other hand, the guaranty in this case is explicit, providing:

"In consideration of the execution of the foregoing Agency Agreements by and between OLYMPIC INSURANCE COMPANY, INDUSTRIAL COUNTY MUTUAL and MARATHON INSURANCE COMPANY, hereinafter referred to as "insurers", and H. O. HARRISON, INCORPORATED, dba HARRISON'S INSURANCE SERVICE, a Louisiana corporation, hereinafter referred to as "Harrison", the undersigned, constituting the majority stockholders of Harrison, jointly and severally, irrevocably and unconditionally, guarantee to Insurers, their successors and assigns the full and prompt payment when due of any and all notes, drafts, checks (hereinafter called "Instruments"), conditional sale contracts, leases, chattel mortgages or other form of security agreements (hereinafter called "agreements") and any and all indebtedness, direct or indirect, absolute or contingent, which may now be in existence or owing from, or hereafter arising or executed by Harrison to Insurers. * * *"

"This shall be a continuing guarantee and shall remain in full force and effect until payment is received by Insurers of all obligations of Harrison now existing or hereafter arising. No notice of any indebtedness already or hereafter contracted or renewed by Harrison need be given to the undersigned and the undersigned's liability hereunder shall not in anywise be affected or impaired due to the invalidity, irregularity or unenforceability of any agreement or instrument."

The contract is the law between the parties, (Louisiana Civil Code Article 1901) and Harrison is bound by his agreement. Accordingly, plaintiff is entitled to a judgment against Harrison on his guaranty binding him solidarily with the Corporation.