# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60432

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2017

Lyle W. Cayce
Clerk

HENRY HARRIS,

      Plaintiff–Appellant,

v.

JACKSON COUNTY, MISSISSIPPI; JACKSON COUNTY BOARD OF SUPERVISORS, individually and collectively; MIKE BYRD, Sheriff, in his official capacity; KEN MCCLENIC, Officer, in his official capacity; OTHER UNKNOWN JOHN AND JANE DOES, A-Z, also in their official and individual capacities,

      Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:14-CV-435

Before KING, JOLLY, and PRADO, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Henry Harris appeals the district court's separate orders granting summary judgment in favor of Jackson County, Mississippi, and Officer Ken McClenic, in his official and individual capacity (collectively,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60432

"Appellees"). Harris argues that he raised sufficient questions of fact to survive summary judgment as to his constitutional excessive force claim against both Appellees. We AFFIRM.

## I. BACKGROUND

### A.    Underlying Facts

Over several months prior to the events of this case, Officer McClenic received intelligence that a known drug dealer and others were running a "gambling house" out of a building in Moss Point, Mississippi. On July 10, 2013, a confidential informant told Officer McClenic that he had played a game of poker in the gambling house, had purchased poker chips from Harris, and had witnessed a sale of marijuana from inside the building. Several agents surveilling the property had also observed another known drug dealer entering and exiting the building several times and on one occasion saw this drug dealer place a bag inside the fuse panel of a car. Based on this information, Officer McClenic obtained a search warrant for the building.

The warrant was executed on July 10, 2013. A distraction device was deployed in the building to gain access through the rear door and Officer McClenic prepared to enter the building through the front. Before Officer McClenic was able to enter, several individuals ran out of the house through the front door. Harris was one of these individuals. Officer McClenic claims that he then struck with his ASP[1] three to four individuals who "were refusing to get on the ground and show their hands." Harris was one of those on whom Officer McClenic used his ASP, purportedly to ensure compliance with law enforcement instructions. Harris alleges that his elbow was injured by the blow from the ASP and his fall to the ground. Thereafter, Harris was transported to a hospital for treatment.

---

[1] An ASP is a police baton.

2

No. 16-60432

B.    **Procedural Background**

On July 24, 2014, Harris filed suit in Mississippi state court against Jackson County ("the County"); the Jackson County Board of Supervisors, individually and collectively; the Jackson County Sheriff's Office; the Jackson County Narcotics Task Force; Sheriff Mike Byrd, in his official and individual capacity; and Officer Ken McClenic, in his official and individual capacity. In his complaint, Harris alleged claims for wrongful arrest and excessive force under 42 U.S.C. § 1983, claims of conspiracy pursuant to 42 U.S.C. §§ 1985(3) and 1986, and assorted state law claims.

On December 2, 2014, the defendants removed the case to federal court. On March 27, 2015, the district court granted separate motions to dismiss in favor of the Sheriff's Department, the Task Force, and Byrd and McClenic in their official capacities. On August 10, 2015, Byrd and McClenic filed a motion for summary judgment based on qualified immunity regarding the claims against them in their individual capacities. The district court granted the motion and dismissed all claims against Byrd and McClenic on October 9, 2015. Thereafter, Jackson County filed a motion for summary judgment. The district court granted the motion on May 23, 2016, and entered final judgment. Harris timely appealed.[2] In his brief before this Court, Harris only contends that the district court erred in dismissing his excessive force claims against McClenic and the County.

---

[2] The Appellees contend that this Court lacks jurisdiction over any claims against the Task Force and McClenic, individually, because his Notice of Appeal identifies only "the District Court's March 23, 2016 Memorandum Opinion and Order granting Jackson County summary [judgment] as to all remaining claims . . . and Final Judgment." *See Lockett v. Anderson*, 230 F.3d 695, 699 (5th Cir. 2000). We disagree. Because "[a]n appeal from a final judgment preserves all prior orders intertwined with the final judgment," we find Harris's notice adequate to confer our Court with jurisdiction over any prior district court orders. *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 884 (5th Cir. 1998) (alteration omitted) (quoting *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1485 (5th Cir. 1997)).

## II. DISCUSSION

### A.     Standard of Review

We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court may "affirm a grant of summary judgment on any grounds supported by the record and presented to the [district] court." *Cuandra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (quoting *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008)).

### B.     Claim Against Officer McClenic

Harris argues that Officer McClenic's use of an ASP to strike Harris during the raid constituted excessive force.[3] The district court granted summary judgment on this claim on the basis of qualified immunity.

"'A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof,' shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721,728 (5th Cir. 2016)). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more

---

[3] Harris raises this claim against Officer McClenic both in his individual and his official capacity. Because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," we only address Harris's claims against McClenic in his individual capacity in this section. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Harris's claim against the County is analyzed in the section that follows.

than 'mere allegations.'" *King*, 821 F.3d at 654 (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

To succeed on an excessive force claim, a plaintiff must show: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). The reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Conner*, 490 U.S. 386, 396 (1989). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ballard*, 444 F.3d at 402 (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396).

Taking the facts in the light most favorable to Harris as we must, *Id.* at 396, the raid occurred in the following manner: First, Officers deployed a flash grenade in the building. Officers could then be heard shouting at the individuals in the building to "get on the ground."[4] Some of the individuals in the building, including Harris, ran toward the front door, where Officer McClenic was stationed. Upon exiting the building, Harris states he was instructed to get on the ground and was in the process of complying with these

---

[4] Officer McClenic also claims that he could hear someone shout "gun" and "where is the gun" from inside the building, but Harris says he never heard such an exclamation. Harris does, however, acknowledge that Officer McClenic came to see him sometime after the raid and explained that the reason "he hit [Harris was] because he heard somebody say 'gun' and he wanted [Harris] to immediately jump down."

orders when McClenic struck him in the back and elbow, knocking him to the ground.[5]

As an initial matter, we note that the district court appears to have improperly made factual inferences in favor of Officer McClenic rather than Harris. Applying the correct standard, Harris may have alleged enough to raise a material question of fact regarding whether a constitutional violation occurred. Regardless of the outcome on the first prong of the qualified immunity inquiry, however, we do not find that the right alleged was clearly established at the time of the raid.[6]

While it is clear that using force on a suspect that is handcuffed, subdued, and not resisting is excessive, *see Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015), *cert. denied*, 137 S. Ct. 492 (2016), that was not the case here. Harris has not identified any cases clearly establishing a constitutional violation on facts similar to this case, and we have found none. Because Harris has not met his burden to prove otherwise, we hold that the district court properly concluded that Officer McClenic was entitled to qualified immunity. *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (stating that a plaintiff must show that the alleged conduct is "objectively unreasonable in light of clearly established law" to warrant denial of qualified immunity).

## C.    Claim Against Jackson County

Harris also claims that Jackson County should be held liable for Officer McClenic's alleged use of excessive force. Municipal liability under § 1983

---

[5] Harris's explanation of this event has been somewhat inconsistent throughout the life of this case. In both his appellate brief and an initial set of interrogatories, Harris claims that he was telling Officer McClenic that it was taking him longer to get on the ground because of a previous back surgery when he was struck with the ASP. This assertion, however, is unsupported by Harris's deposition testimony.

[6] Importantly, Harris fails to cite a single case in his appellate brief illustrating that the law is clearly established in this case and did not file a response to Officer McClenic's motion for summary judgment before the district court.

requires a plaintiff to prove: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)). Because courts have roundly rejected municipal liability based on a theory of respondeat superior, "isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). Rather, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Id.*

Existence of a policy can be shown in two primary ways: (1) the existence of an officially adopted policy, regulation, or decision promulgated by individuals with policymaking authority; or (2) "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 579. "[A] single decision by a policy maker may [also], under certain circumstances, constitute a policy for which a [municipality] may be liable." *Valle*, 613 F.3d at 542 (first and third alterations in original) (quoting *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000)). "However, this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.*; *accord Piotrowski*, 237 F.3d at 579.

With regard to municipal liability, Harris argues that McClenic's conduct is attributable to the County for two reasons.[7] First, Harris claims that

---

[7] Harris previously also argued that the County is liable because of its failure to adequately train and supervise its officers. On appeal, however, he devoted merely one sentence to this argument and does not point to any facts in support of his contention. Accordingly, we find this argument waived. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th

McClenic is the sort of "final decider" whose actions are automatically attributable to the County. But other than his bare assertion that McClenic, as the head of the Narcotic Task Force, has the power to make policy for that agency, Harris provides no support for this argument. Moreover, because this argument was never raised before the district court, we find it waived. *See Capps v. Humble Oil & Ref. Co.*, 536 F.2d 80, 82 (5th Cir. 1976) (per curiam).

Second, Harris argues that there was a "persistent, widespread practice" under which McClenic and his officers were acting, and that practice allegedly violated his constitutional rights.[8] As the district court correctly concluded, however, Harris has not raised any evidence to show the sort of pattern of abuses necessary to find liability under this theory of municipal liability. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850–51 (5th Cir. 2009) (stating that it is "clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case" and that such prior instances of conduct must be "sufficiently numerous" and not "isolated" (internal quotation marks and citations omitted)).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Officer McClenic and Jackson County.

---

Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

[8] Harris does not elaborate on the type of practice under which the officers were purportedly acting.